VINCENT J. INCOPERO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Incopero v. Commissioner
Docket No. 8609-77.
United States Tax Court
T.C. Memo 1979-22; 1979 Tax Ct. Memo LEXIS 505; 38 T.C.M. (CCH) 72; T.C.M. (RIA) 79022; January 15, 1979, Filed Vincent J. Incopero, pro se. Tommy F. Thompson, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $ 2,406 in petitioner's 1975 Federal income tax. The sole issue before us is whether or not petitioner sustained a theft loss pursuant to section 165(c). [1]
FINDINGS OF FACT The parties have submitted a stipulation of facts which, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner Vincent J. Incopero resided at 482 Prospect, Elmhurst, Illinois, at the date of the filing of the petitioner herein. In *506 August 1974 petitioner's home was extensively damaged by fire. The home consisted of two stories above ground, with a basement and a garage below ground. Since the house was in part constructed of brick and the superstructure remained sound, the home was repaired. The repairs restored the home to its original condition. The repairs began after the winter months of 1975 and were completed thereafter in due course. The fire destroyed the interior of both stories above ground, completely consuming the contents on both of those floors. However, the garage and basement level below ground were not destroyed. Petitioner was skilled in the repair of antique cars, and spent some of his time during 1974 repairing antique cars as well as attending school. Due to its uninhabitable condition, petitioner ceased to occupy the house immediately after the fire in August of 1974 and did not reoccupy the house until the repair and restoration work had been completed. Immediately after the fire in 1974, the home was boarded up and remained boarded up until the repairs began in the spring of 1975. On Schedules A and B of petitioner's 1975 income tax return, he claimed a casualty loss which *507 the return attributes to the following: "home burned to ground 74 excess loss 1975." Pursuant to a subsequent audit of petitioner's return for 1975 which focused on the casualty loss deduction, petitioner forwarded a four-page list of approximately 100 different items of property whose loss comprised the casualty or theft loss deduction in question. A substantial portion of these items comprised automobile parts for antique cars, ranging from a radiator to an aluminum block, and included other items that are described as "metric tools, body tools, a welder, and similar items." However, the list also includes such items as sheets and pillowcases, towels, and draperies, brass candle sticks, a tiffany lamp, two diamond rings, some coins, a dictating tape recorder, an electric typewriter, and an oriental rug. The list indicates that the oriental rug was purchased four years prior to the casualty or theft loss for $ 1,500 and had an actual value at the date of the loss of $ 2,000. The cover letter forwarding the four-page list of items to the District Director of Internal Revenue reads as follows: Sir You state in your letter of 2-11-77 in the last paragraph in reference to the *508 1975 casualty loss, that the loss would be deductible only in the year of the casualty. At this point I would like to state that the items I discovered missing were viewed by me amongst the rubble of my house on the last day of 1974. In the early part of the year 1975 the rubble was cleaned up and the house was rebuilt. Upon my reentry into the house at its completion in 1975 I discovered the reported items missing as per income tax return of 1975. The bulk of these items were noninflammable and I can only conclude that they were removed with the rest of the rubbish. OPINION The issue that we face is whether or not petitioner incurred a casualty or theft loss for the items in question, and it is one that is purely factual. Cf. . On the record before us, we must decide this issue for respondent. Petitioner's account of the facts contains several irreconcilable conflicts. We begin by noting that the only area of petitioner's home not largely destroyed by the fire in August of 1974 was the basement and garage below ground. Petitioner claims that more than $ 15,000 worth of property in question was left in the basement *509 when the house was boarded up, and that this property was subsequently stolen. He claims to have discovered the loss in February of 1975. We find it difficult to believe that petitioner would leave property worth $ 15,000 in a house that was boarded up and expose himself to the substantial danger of loss by theft or vandalism, particularly since petitioner testified that he had no insurance on the property in question. In this connection we note that some of the property on the list was jewelry--two diamond rings, gold cufflinks, and a $ 5 gold piece stickpin. The list also includes coins and office equipment, as well as household items--tiffany lamps, sheets and pillowcases and drapes. Additionally, it seems highly unlikely that this property would have all been left in the basement when, in petitioner's words, he simply walked away from the house. For example, one of the items in question is an oriental rug which petitioner claims was rolled up and stored in the basement. Petitioner claims to have purchased the rug for speculation for $ 1,500 four years before the fire, and claims it had a fair market value of $ 2,000 at the time of the casualty. We doubt that petitioner *510 would walk away from a rug of this value and leave it in a boarded-up home. Petitioner's story of the casualty or theft loss seems to have undergone evolution from the time he filed his return through the trial. The trauma of the fire was extremely hard on petitioner, and we can understand why his memory would be unclear. But his uncertainty cannot be ignored on the record before us. When petitioner filed his return, he indicated that he suffered a casualty loss arising from the destruction of his home by fire. During the course of the audit, petitioner claimed in the cover letter forwarding a list of lost items to respondent that "the bulk of these items were noninflammable and I can only conclude that they were removed with the rest of the rubbish." Petitioner also claims in the letter that "the items I discovered missing were viewed by me amongst the rubble of my house on the last day of 1974." At trial, petitioner no longer contends that the items were carted away with the remaining rubble or rubbish, but that he discovered in February of 1975 that they had been stolen from the home. We are unable to know which of these stories, if any, reflects the events that actually *511 occurred. Many of the items on the list were certainly not "noninflammable"--for example, the drapes, the towels, and the oriental rug. It is difficult to see how nearly a 100 different items could have been "removed with the rest of the rubbish" when these items ranged from car headlights to tires to a motor block. Indeed, it is difficult to see how all of these items could have been stored in anything smaller than a warehouse, much less the basement of a home. Certainly if they were stolen, as petitioner claims, the logistical operation must have been a major undertaking given the size and multiplicity of the various items on the list. Petitioner was unable to produce any checks or reconstructed records of any kind relating to the purchase of the items in question. He was also unable to supply any names of any individuals from whom he purchased any of the items in question. Petitioner attributes this inability to the destruction of the complete inventory of these items that he had at the time of the fire. That the lack of records may be attributable to the fire, is completely understandable. However, it is difficult to understand why some small scrap of evidence in the way *512 of checks or names of individuals from whom any of the items were acquired could not be supplied. Additionally, since the fire occurred in August of 1974 and it was not until sometime in 1977 that the comprehensive list of items forming the basis of this loss was compiled, it is difficult to see how the list can be so detailed and precise as to the various items lost, the number of items in each category, the year that they were acquired, the cost of their acquisition and the present actual value. This detailed recollection contrasts unfavorably with petitioner's inability to produce even the name of an individual who sold him some of the items in question. For example, he should remember where he purchased an item as expensive as the $ 1,500 oriental rug, for which it would be unlikely that he would pay cash in any event. As noted, we believe that petitioner's recollection may be faulty due to the traumatic nature of the shock he experienced and the tragedy associated with the destruction of his home. However, while the impact of the tragic events surrounding the fire on petitioner's recollection may be understandable, we are nevertheless unable to allow a casualty or theft *513 loss deduction on the record before us. Due to concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue.↩